**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**JAMES R. POOLE,**

Petitioner,

v.

**MICHAEL O'KEEFE, Commissioner, Minnesota Department of Health and Human Services,**

Respondent.

Civil No. 01-1460 (PAM/JGL)

**REPORT AND RECOMMENDATION**

---

APPEARANCES

James R. Poole, pro se

Angela M. Helseth, Esq., Assistant Attorney General, for Respondent

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Petitioner James R. Poole's Petition pursuant to 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. The matter has been referred to the undersigned for a Report and Recommendation pursuant 28 U.S.C. § 636 and D. Minn. LR 72.1(c). For the reasons set forth below, the Court recommends that the petition be denied and the case be dismissed with prejudice.

FEB 13 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner James Poole is under a Traverse County District Court order of civil commitment to the Minnesota Sex Offender Program as a sexually dangerous person and sexual psychopathic personality. Respondent Michael O'Keefe is the Commissioner of the Minnesota Department of Human Services, which operates the sex offender program at the Minnesota Correctional Facility ("MCF") in Moose Lake, Minnesota, where Poole is confined. Poole filed his habeas petition on August 8, 2001, challenging the constitutionality of his civil commitment and seeking release.

### A. <u>Poole's Criminal Conduct and Incarceration</u>

Poole graduated with a medical degree from the University of Wisconsin in 1963 and entered the military as a doctor in 1964. He met his first wife while stationed in Germany, and they had three children. The family returned to the United States in 1967 and eventually moved to Wheaton, Minnesota. The Pooles divorced in 1974, and Mrs. Poole moved to Sweden with the children. Poole remained in Wheaton. He married his second wife in 1980, and they subsequently had five children.

Poole practiced general medicine with a substantial obstetrics-gynecology component. In 1990, several of Poole's patients alleged that he had acted with sexual impropriety during medical examinations. A subsequent investigation revealed that Poole had sexually contacted and penetrated

numerous patients without a bona fide medical purpose. In addition, a search of his home revealed pornographic material, drafts of two pornographic novels authored by Poole, and incriminating letters from one of his daughters. In 1991, a jury found Poole guilty of thirteen counts of third degree criminal sexual conduct and three counts of fourth degree criminal sexual conduct for sexually abusing eleven female patients.[1] The convictions were affirmed by the Minnesota Court of Appeals and the Minnesota Supreme Court, although his sentence was reduced on appeal. Poole was initially incarcerated at MCF-Stillwater and transferred to several other prisons before prison officials determined that he should be admitted to the sex offender treatment program at MCF-Moose Lake in 1996. However, he was discharged nearly a year later for violating the confidentiality requirements of the program and failing to make progress. Because of his termination from the program, Poole was transferred to MCF-Faribault on March 4, 1997.

**B. <u>The Civil Commitment Petition and Relevant Proceedings</u>**

Poole's scheduled release date from MCF-Faribault was July 26, 1999. On April 23, 1999, the Minnesota Attorney General filed a petition on behalf of Traverse County to commit Poole as a sexually psychopathic personality and a sexually dangerous person as defined by Minn. Stat.

---

[1] The details of Poole's conduct will not be restated in this Report and Recommendation, having been extensively recited in portions of the record submitted by Respondent. (R. at 2-15, 20-26, 63-86.)

§ 253B.02, subds. 18b, 18c. The petition described in detail Poole's criminal conduct with his eleven former patients as well as sexual conduct toward a second cousin, a child friend of the family, his second wife's nieces, and his second wife's sister. (R. at 2-26.)

The Honorable John C. Lindstrom, Traverse County District Court, presided over a six-day trial beginning on August 11, 1999. The court issued its Findings of Fact, Conclusions of Law, and Order for Commitment on November 17, 1999, and found that Poole was both a sexually psychopathic personality and a sexually dangerous person. The court therefore committed Poole to the Minnesota Sexual Psychopathic Personality Treatment Center. Poole appealed his commitment to the Minnesota Court of Appeals, which affirmed the commitment in an unpublished opinion on June 20, 2000. The Minnesota Supreme Court denied review on August 15, 2000.

## II. DISCUSSION

Habeas corpus is a federal remedy for a state prisoner's challenge to the legality of his or her detention. See 28 U.S.C. § 2254(a); Preiser v. Rodriguez, 411 U.S. 475, 485-86 (1973). Federal courts may entertain a habeas corpus petition only on the grounds that the prisoner's incarceration violates the United States Constitution or other federal law. See 28 U.S.C. § 2254(a); Wycoff v. Nix, 869 F.2d 1111, 1113 (8th Cir. 1989).

In the petition, Poole first alleges that his right to due process was violated because the Minnesota civil commitment statute lacks the procedural protections included in the corresponding Kansas statute, particularly the right to a jury trial and proof beyond a reasonable doubt. Second, Poole contends that the trial court did not allow his expert witness, Dr. Elizabeth Loftus, to testify about the unreliability of repressed and recovered memories, in violation of the Sixth Amendment. Third, Poole argues that he did not receive a jury trial as provided by the Seventh Amendment. Poole's fourth basis for his habeas petition is that he did not receive equal protection under the law. Fifth and finally, Poole asserts that he was denied effective assistance of counsel when the trial court capped his attorney's fees, did not allow attorney fees for his appeal to the Minnesota Supreme Court, and did not appoint an attorney to assist him with this habeas petition.

**A. Exhaustion of Remedies**

A habeas corpus petition brought pursuant to 28 U.S.C. § 2254 may not be granted unless the petitioner demonstrates that he has exhausted his available state remedies with respect to every claim raised in the habeas petition. See 28 U.S.C. § 2254(b)(1). A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of the claim. See Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993) (citing Picard v. Connor, 404 U.S. 270, 275-278

(1971)). However, § 2254 was amended in 1996 to permit a court to deny a petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available" in the state courts. 28 U.S.C. § 2254(b)(2); see also Lambrix v. Singletary, 520 U.S. 518, 525 (1997); Evans v. Lock, 193 F.3d 1000, 1002 (8th Cir. 1999). Because the Court finds that Poole's petition should be denied on the merits, the Court will not address Respondent's exhaustion argument.

**B. The Merits of the Petition**

A § 2254 petitioner is entitled to habeas relief only if (1) the relevant state court decision or proceedings were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Poole makes no argument that any part of the trial court decision was based on an unreasonable determination of facts. The Court will therefore address whether aspects of the trial court's decision violated clearly established federal law.

**1. Procedural Due Process**

Poole alleges that his right to procedural due process was violated because the Minnesota civil commitment statute lacks the procedural protections included in the corresponding Kansas statute, particularly the right

to a jury trial and proof beyond a reasonable doubt. The Minnesota statute provides for a commitment trial to the court for persons alleged to be sexually dangerous or with a sexual psychopathic personality. See Minn. Stat. §§ 253B.18, subd. 1; 253B.185, subd. 1. The court must find clear and convincing evidence to commit the person. See Minn. Stat. § 253B.18, subd. 1.

In Addington v. Texas, 441 U.S. 418 (1979), the Supreme Court considered a Texas civil commitment statute and the burden of proof required to indefinitely commit a mentally ill person. Weighing the argument that such commitment requires proof beyond a reasonable doubt, the Court stated that "a civil commitment proceeding can in no sense be equated to a criminal prosecution." Id. at 428 (citation omitted). This principle was later reiterated specifically with respect to civil commitment for sex offenders. See Kansas v. Crane, No. 00-957, 2002 WL 75609, (U.S. Jan. 22, 2002) (citing Hendricks v. Kansas, 521 U.S. 346, 369 (1997)). The Addington Court subsequently found, therefore, that the "reasonable doubt standard is inappropriate in civil commitment proceedings." 441 U.S. at 432. The Court explained that "[t]he essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold. As the substantive standards for civil commitment may vary from state to state, procedures must be allowed to vary so long as they meet the constitutional minimum." Id. at 431. The Court ultimately held that the constitutional

minimum standard to satisfy procedural due process in a commitment proceeding is proof greater than by a preponderance of the evidence, i.e. clear and convincing evidence. See id. at 432-33.

Poole offers no argument why Addington does not control in this case. Rather, Poole relies on Hendricks v. Kansas, 521 U.S. 346 (1997), which upheld the Kansas Sexually Violent Predator Act despite challenges based on substantive due process, double jeopardy, and ex post facto grounds. See id. at 356. Poole asks the Court to infer that, by upholding Hendricks, the Supreme Court intended to require the procedural safeguards of the Kansas statute to serve as the constitutional minima. However, the Supreme Court did not discuss the Kansas statute's procedural requirements of burden of proof or trial to a jury, and Hendricks is therefore inapplicable. This Court finds that the clear and convincing evidentiary standard in Minn. Stat. § 253B.18 satisfies procedural due process in accordance with Addington.

Turning to Poole's argument that he was procedurally entitled to a trial before a jury, the Court can find no clearly established Supreme Court precedent requiring a jury trial in civil commitment proceedings for sex offenders. A habeas petition may be granted only when the state proceedings at issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1). That is, the decision must have been

contrary to a holding of the Supreme Court, not merely dicta. See Closs v. Weber, 238 F.3d 1018, 1020 (8th Cir. 2001) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). A state court decision is contrary to established federal law if it contradicts a Supreme Court holding on a question of law or if it reaches a different result from a Supreme Court case involving materially indistinguishable facts. See id. (citing Williams, 529 U.S. at 405-06). Neither situation is present here. As discussed above, Hendricks did not reach the question of law currently at issue, nor did it involve materially equivalent facts. Furthermore, this Court has found no other Supreme Court case addressing the same issue of law or involving materially indistinguishable facts.[2] Thus, the Court must conclude that Poole's commitment trial to the court was not "contrary to" established federal law. See id.

The Court also finds that the trial to the court did not involve an "unreasonable application" of federal law. Under this clause, a court may grant the habeas petition if the state court identified a controlling Supreme Court case but unreasonably applied the rule of law to the petitioner's case. See Williams, 529 U.S. at 413. No such situation occurred in this case.

---

[2] In a case analogous to the one at hand, the Supreme Court in 1940 examined procedures provided by a Minnesota statute for civil commitment of persons with a "psychopathic personality." See Minnesota ex rel. Pearson v. Probate Court of Ramsey County, 309 U.S. 270, 271-72 (1940). Although the procedures included a hearing to a judge, the Court upheld the statute on procedural due process grounds. See id. at 275-77.

In conclusion, the Court finds that the Minnesota civil commitment statute did not violate Poole's right to procedural due process. The Supreme Court does not require proof beyond a reasonable doubt or a jury trial in civil commitment proceedings for sex offenders. This aspect of Poole's habeas petition should be denied.

### 2. Poole's Sixth Amendment Claim

Poole contends that his Sixth Amendment rights were violated because he was denied the right to compulsory process for obtaining the testimony of a witness at the commitment trial. Specifically, the trial court did not permit his expert witness, Dr. Elizabeth Loftus, to testify. Assuming arguendo that Poole was entitled in the civil commitment proceeding to protections afforded to criminal defendants by the Sixth Amendment, the Court finds that Poole's constitutional right to compulsory process was not infringed.

The Sixth Amendment provides in part that a criminal defendant shall have the right to "compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. The right to compulsory process encompasses the right to offer testimony from witnesses to establish a party's own version of the facts. See Washington v. Texas, 388 U.S. 13, 19 (1967). Compulsory process does not guarantee a defendant the absolute right to present relevant evidence. See United States v. Scheffer, 523 U.S. 303, 308 (1998) (citations

omitted). A defendant must comply with established rules of procedure and evidence. See Chambers v. Mississippi, 410 U.S. 284, 302 (1973).

The trial court's decision to exclude Dr. Loftus' testimony did not violate Poole's Sixth Amendment right to compulsory process. The court excluded the testimony of Dr. Loftus in part because Poole did not provide a written summary of her testimony as required by the pretrial scheduling order. (R. at 152, 240.) Dr. Loftus provided only a short statement, which did not set forth her opinions as required by the order. (R. at 153.) Excluding a witness's testimony for failure to comply with pretrial disclosure rules is not unconstitutional. See Taylor v. Illinois, 484 U.S. 400, 413 (1988). In addition, Poole classified Dr. Loftus as a rebuttal witness who would testify about the "recovered memories" of three victim witnesses. (R. at 174, 185.) Dr. Loftus was not present during the testimony of the witnesses whose testimony she would be called to rebut, and she had not reviewed any other information about the witnesses other than the civil complaints filed by two of the victims who testified. (R. at 155.) Consequently, the trial court found that Dr. Loftus' testimony would have lacked foundation. (R. at 153.) A trial court is permitted to exclude expert testimony which lacks proper foundation. See Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597 (1993). Because Poole intended to use Dr. Loftus specifically to discredit the victims' testimony, Dr. Loftus would have had to hear the testimony to provide a proper foundation.

**3. Poole's Seventh Amendment Claim**

Poole next argues that his Seventh Amendment right was violated because he did not receive a jury trial. As discussed in Part II.B.1, there is no clearly established Supreme Court precedent providing for a jury trial in civil commitment proceedings for sex offenders. The Seventh Amendment does not provide for jury trials in all civil cases, but only in suits at common law. See U.S. Const. Amend. VII. As the Third Circuit stated, a petitioner such as Poole cannot rely on the Seventh Amendment because "a proceeding leading to civil preventive detention, whatever else it is, plainly is not a suit at common law." United States v. Perry, 788 F.2d 100, 117 (3d Cir.), cert. denied 479 U.S. 864 (1986). Poole's Seventh Amendment claim is without merit.

**4. Equal Protection**

Poole's fourth basis for his habeas petition is that he did not receive equal protection under the law. As his basis, Poole expresses dissatisfaction that two of his victims had a right to a jury trial in their civil suits against Poole whereas he did not have such a right in the commitment proceeding. Poole's equal protection claim is meritless for at least two reasons, each of which is an independent basis to deny his claim.

The Fourteenth Amendment provides in relevant part that no state shall deny a person "the equal protection of the laws." U.S. Const. Amend. XIV. First, a person alleging an equal protection violation has the burden of

proving "the existence of purposeful discrimination." McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (quoting Whitus v. Georgia, 385 U.S. 545, 550 (1967)). Here, Poole offers no evidence of intentional or purposeful discrimination with respect to the Minnesota statute or the trial court. Second, Poole is not similarly situated to the two victims, which is also a requirement for an equal protection claim. See F.S. Royster Guano Co. v. Commonwealth of Virginia, 253 U.S. 412, 415 (1920). A person subject to commitment proceedings as a sexually dangerous person or a sexually psychopathic personality is not similarly situated to a civil plaintiff suing her assailant for damages.

**5. Effective Assistance of Counsel**

After the petition for commitment was filed, the trial court appointed attorney Rachel Rosen to represent Poole. The court authorized Rosen to spend up to 300 hours in Poole's defense at a rate of $60 per hour, for a maximum of $18,000.00, and costs up to $11,000.00 for expert witnesses, investigators, and other expenses. (R. at 32.) At Rosen's request, the court increased the latter amount to $12,000.00 and instructed Rosen that any additional amounts would require written permission of the court. (R. at 34-35.) The court also ordered that if co-counsel was appointed, he would be subject to the total attorney time limitation of 300 hours. (R. at 35.) On or about June 15, 1999, Rosen became ill and was unable to further represent Poole. (R. at 243.) Rosen was paid $7560.00 for the work she had done. The

trial court appointed James Dahlquist as substitute counsel. Although Rosen was no longer attorney of record, however, she apparently continued to work on Poole's case. After the commitment trial, Dahlquist asked for and received $15,534.00 in fees and $1438.00 in costs. Rosen submitted a bill for $29,778.42 for work done after the substitution of counsel, which the court declined to pay.

Poole now asserts that he was deprived of effective assistance of counsel by the trial court's decision. Poole also claims that he was denied effective assistance of counsel because the court did not provide attorney's fees for his appeal to the Minnesota Supreme Court and did not appoint counsel to assist him with this habeas petition.

Poole did not receive appointed counsel for his trial because of the Sixth Amendment, but because the relevant Minnesota statute provided for appointed counsel in the commitment proceedings. See Minn. Stat. § 253B.07, subd. 2c. A federal court on habeas review may not examine state court rulings on questions of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Poole does not now argue that he was entitled to the Sixth Amendment protections afforded to a criminal defendant. Even if he was, however, Poole has failed to identify any harm as a result of the trial court's order. To establish ineffective assistance of counsel, a person must show that the lawyer's performance was deficient and that the performance prejudiced the

person's case. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Here, Poole does not even allege, much less show, that either Rosen's or Dahlquist's performance was deficient, or that their performance prejudiced his case. To the contrary, the record reveals that Poole had two attorneys working on his behalf throughout the commitment proceedings. It is notable that neither attorney petitioned the trial court for additional fees and expenses during the commitment proceedings, as permitted by the court's order. Rosen did not apply for the additional fees until after the trial court's final decision; thus, the court's post-trial decision could not have affected her pretrial performance. Moreover, Rosen eventually was paid from a $40,000.00 "trust fund" established by Poole's friends and family. (Pet. Reply Br. at 19.) This aspect of Poole's petition is without merit.

In Poole's reply brief, he suggests that the limit on expert fees prevented him from retaining Dr. Loftus. This argument fails for several reasons. First, this argument is antithetical to Poole's earlier assertion that Dr. Loftus was available to testify during the trial, but was prevented by the trial court on procedural grounds. Second, Poole admits he raised enough money from friends and family to pay for Dr. Loftus' services at trial. (Id. at 17.) Third, although the Sixth Amendment guarantees compulsory process for obtaining witnesses, this is not a derivative right of the Sixth Amendment right to counsel, but a separate and distinct right. Thus, Poole's argument that the

cap on expert witness fees violated his right to effective assistance of counsel is flawed.

Poole next claims that he was not provided with attorney's fees to appeal the final commitment order to the Minnesota Supreme Court. On September 14, 2000, the Honorable Steven E. Drange found that Poole was no longer indigent and denied Poole's request for appointment of counsel to appeal the decision of the Minnesota Court of Appeals. (Pet. App. B.) This Court has located no United States Supreme Court precedent giving persons under an order of civil commitment the right to appointed counsel throughout the appellate process. On the other hand, even indigent criminal defendants are not entitled to appointed counsel on discretionary review to a state's highest court. See Ross v. Moffitt, 417 U.S. 600, 610-12 (1974).

Finally, with respect to Poole's claim that Judge Drange wrongfully denied his motion for appointed counsel in this habeas proceeding, Poole is not entitled to appointed counsel. There is neither a constitutional nor a statutory right to counsel in habeas proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555-57 (1987). Furthermore, the appointment of counsel in habeas cases is a matter committed to the discretion of the trial court, see McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997), which in this habeas proceeding is this federal court, not the state trial court. This Court denied Poole's motion for appointment of counsel, finding that the case was not factually or legally

complex and that Poole was able to articulate his claims, argue his positions, and communicate effectively. (Order of Aug. 15, 2001 at 2.)

In conclusion, Poole was not wrongfully denied effective assistance of counsel at any point in the underlying proceedings. This aspect of the petition should therefore be denied.

Based upon the above, and upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner James R. Poole's Petition pursuant to 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) be **DENIED** and the matter be **DISMISSED WITH PREJUDICE**.

Dated: February 13, 2002

JONATHAN LEBEDOFF
United States Magistrate Judge

Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by March 4, 2002, a copy of written objections which specifically identify the

portions of the Report or Recommendation to which objection is being made, the basis for the objections, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.