# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 02-2629

| | | |
|---|---|---|
| James Robinson Poole, | * | |
| | * | |
| Petitioner/Appellant, | * | CV01-1460 PAM/JGL |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Kevin Goodno,[1] Commissioner, Minnesota Department of Health and Human Services, | * | |
| | * | |
| Respondent/Appellee. | * | |

Submitted: May 16, 2003
Filed: July 7, 2003

Before LOKEN, Chief Judge, FAGG and MURPHY, Circuit Judges.

MURPHY, Circuit Judge.

James Robinson Poole filed this petition for habeas corpus seeking release from his civil commitment as a Sexual Psychopathic Personality (SPP) and a Sexually Dangerous Person (SDP) under the Minnesota Sexual Psychopathic Personality and Sexually Dangerous Person Acts, Minn. Stat. §§ 253B.02, subds. 18b, 18c; 253B.18,

[1] Commissioner Goodno, successor to Michael O'Keefe, was appointed during the pendency of this appeal and is substituted as appellee. See Fed. R. App. P. 43(c).

SEP 15 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

subds. 2, 3; 253B.185 (2002). After denying the petition, the district court[2] issued a certificate of appealability on whether the denial of a jury trial in his civil commitment under Minnesota law violated his right to due process. That issue is the subject of Poole's appeal.

In 1991, a Minnesota jury found Poole guilty of thirteen counts of third degree criminal sexual conduct and three counts of fourth degree criminal sexual conduct. The victims were eleven young female patients whom Poole sexually abused between 1987 and 1990 while he was engaged in general medical practice in Wheaton, Minnesota. After he was convicted, additional allegations of sexual abuse were reported to law enforcement. Four of these victims were members of Poole's family and one was the daughter of friends. Poole was sentenced to the Minnesota Correctional Facility, and his sentence was modified on appeal to 144 months. See State v. Poole, 489 N.W.2d 537 (Minn. Ct. App. 1992), aff'd 499 N.W.2d 31(Minn. 1993). He was scheduled to be released in July 1999, but a civil commitment petition was filed by the county attorney on April 23, 1999.

The petition was filed in state court pursuant to the SPP and SDP Acts, Minn. Stat. § 253B.02, subds. 18b, 18c, and it alleged that Poole met all the requirements for commitment under both statutes. The civil commitment process under Minnesota law provides similar procedures for individuals characterized as SPPs or SDPs as for "mentally ill and dangerous" persons. Minn. Stat. § 253B.18 (2002). All types of civil commitments under the Minnesota Commitment and Treatment Act (MCT Act), Minn. Stat. ch. 253B, are tried to the court without a jury. Minn. Stat. §§ 253B.09, subds. 1, 2; 253B.18, subd. 1 (2002). To commit an individual as an SPP or SDP, the petitioner must prove the requirements for commitment by clear and convincing evidence. Minn. Stat. §§ 253B.185, subd. 1; 253B.18, subd. 1 (2002).

---

[2] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Poole requested a jury trial on his commitment petition, but the request was denied and a six day court trial was held. After considering the evidence, the court found that Poole was both an SPP and an SDP and committed him to the Minnesota Sexual Offender Program at Moose Lake for a 60 day evaluation. An evaluation report was prepared at Moose Lake and submitted to the trial court which held an additional hearing before issuing an order indeterminately committing Poole as an SPP and an SDP.

Poole appealed his commitment to the Minnesota Court of Appeals, which affirmed his indeterminate commitment. See In re Poole, Nos. C4-00-85, C8-00171, 2000 WL 781381 (Minn. Ct. App. June 20, 2000). The Minnesota Supreme Court denied review, and Poole filed this petition in federal court seeking a writ of habeas corpus. A federal magistrate judge[3] recommended the petition be denied, and Poole filed objections. The district court conducted a de novo review before concluding that the petition should be denied. Although it denied the petition, the court issued a certificate of appealability on the question of whether Poole's due process rights required a jury trial before he could be committed as a sexually dangerous person or a sexually psychopathic personality under Minnesota law.

Poole appeals, claiming that he was deprived of his right to a jury trial before being indefinitely committed. He contends that such a right is guaranteed by the Territorial Laws of Minnesota, the right to counsel clause of the Minnesota Constitution, 700 years of common law, and the Seventh and Fourteenth Amendments to the United States Constitution.[4] The state responds that Poole's federal due process

---

[3] The Honorable Jonathan Lebedoff, United States Magistrate Judge for the District of Minnesota.

[4] Much of Poole's argument relies on the Minnesota Territorial Laws and the Minnesota Constitution, but the only claims cognizable on federal habeas review are those based on violation of federal law, as determined by the United State Supreme

rights were not violated by denial of a jury trial in his civil commitment case. It contends that the United States Supreme Court has not directly addressed the issue of a right to a jury trial in civil commitment cases so the state court adjudication did not result in a decision that was contrary to clearly established federal law as determined by the Supreme Court. The Supreme Court has permitted states to set their own procedural requirements for civil commitments, which Minnesota has done and the state's highest court has ruled that sexual predators are not entitled to a jury trial in a commitment case. See State ex rel. Pearson v. Probate Court, 287 N.W. 297, 303 (Minn. 1939).

When a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus can only be granted where the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) (2002) (AEDPA). If a state court reached a conclusion "opposite to that reached by [the Supreme Court] on a question of law" or confronted "facts that are materially indistinguishable from a relevant Supreme Court precedent" and reached the opposite result, then its decision is contrary to clearly established federal law. Williams v. Taylor, 529 U.S. 362, 405 (2000).

---

Court. See 28 U.S.C. § 2254(d) (2002).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his [relevant state court decision] became final." Id. at 390. The statutory phrase "clearly established federal law" means "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. at 412. A state court has unreasonably applied clearly established federal law if it "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the [petitioner's] case." Id. at 413.

Poole argues that the SPP and SDP Acts violate due process because neither statute requires a jury trial. Poole contends that the right to a jury in a civil case is required by the Due Process Clause of the Fourteenth Amendment whenever a serious loss of liberty is at issue. He asserts that the importance of providing a jury when liberty is at issue, in either a civil or criminal case, has been firmly grounded in the common law since the Magna Carta. He additionally claims that recent developments in Supreme Court jurisprudence suggest there is a Seventh Amendment right to a jury trial in civil proceedings such as his, and that right is applicable here under the Fourteenth Amendment. He points out that two recent Supreme Court cases dealing with civil commitments of sexual predators both involved a Kansas statute which provides for a jury trial. See Kansas v. Crane, 122 S. Ct. 867 (2002); Kansas v. Hendricks, 521 U.S. 346 (1997).

Poole cannot obtain the relief he seeks unless the Supreme Court has clearly recognized a right to a jury trial in this kind of civil case. 28 U.S.C. § 2254(d) (2002). Although Crane and Hendricks involved civil commitments of sexual predators under a statute providing for a jury trial, the questions before the Court in both cases related to the constitutional standard for civilly committing dangerous sexual offenders rather than to any jury issue. There was no discussion in either case about the right to a jury trial and no indication that other states must provide the same procedures as Kansas in order to meet constitutional standards. Poole admits that the Supreme Court has

not had occasion to address whether the Seventh Amendment requires a jury trial in civil commitment cases, and the first federal appellate court to consider the issue decided that a jury trial is not constitutionally required. See United States v. Sahhar, 917 F.2d 1197, 1206–07 (9th Cir. 1990).

The Supreme Court's most closely analogous case to the issue before the court is Addington v. Texas, 441 U.S. 418 (1979), in which it ruled that states are free to use differing civil commitment procedures. The appellant in Addington claimed his procedural due process rights had been violated because the standard of proof for commitment was less than proof beyond a reasonable doubt. The Court explained that proof beyond a reasonable doubt is not necessary to ensure due process. The fact that some states have "chosen to adopt the criminal law standard gives no assurance that the more stringent standard of proof is needed or is even adaptable to the needs of all states." 441 U.S. at 430–31. The essence of federalism requires that states "be free to develop a variety of solutions to problems and not be forced into a common, uniform mold. As the substantive standards for civil commitment may vary from state to state, procedures must be allowed to vary so long as they meet the constitutional minimum." Id. Although the Court did not speak directly about juries in Addington, it certainly left it open to states to employ their own preferred procedures. It ruled that a reasonable doubt standard is not required to meet the "constitutional minimum" for civil commitments, and the same type of reasoning could be applied to the type of jury trial issue we face.

In the course of deciding its Sahhar case, the Ninth Circuit examined procedures used in federal indefinite commitment cases and those used by various states for general civil commitment. It concluded that these procedures do much to ensure fairness and accuracy in the commitment process. The procedures provided by the commitment statute under challenge in Sahhar were seen as facilitating "careful evaluation of the individual's mental health and dangerousness" and doing much to ensure that the commitment process was fair and accurate. Sahhar, 917 F.2d at 1207,

1203–04. These procedures included a short term period of commitment and evaluation, followed by a full evidentiary hearing before a magistrate, and the requirement that the criteria for commitment be found by clear and convincing evidence. The individual subject to involuntary commitment was provided the right to a hearing at which he could testify, present evidence and call witnesses, and cross examine those called by the government. Id. at 1204. The Ninth Circuit concluded that due process does not require a jury trial in such proceedings for "trial by jury is neither a necessary element of the fundamental fairness guaranteed by the due process clause, nor an essential component of accurate factfinding." Sahhar, 917 at 1207 (citing McKeiver v. Pennsylvania, 403 U.S. 528, 543 (1971)).

The Minnesota sexual predator statutes have many of the same procedural protections to ensure fairness and accuracy in the commitment process as those cited in Sahhar. See Sahhar, 917 F.2d at 1204. Individuals who may be indeterminately committed as SPPs or SDPs have the same procedural rights as those who may be committed as "mentally ill and dangerous." Minn. Stat. §§ 253B.18, 253B.185 (2002). Although the commitment trial is to the court without a jury, the court must find by clear and convincing evidence that the proposed patient meets the requirements to be considered an SPP or SDP. See Minn. Stat. §§ 253B.18, 253B.185 (2002). An individual has the right to attend and testify at the trial, to call and cross examine witnesses, and to present other relevant evidence. See Minn. Stat. § 253B.08 (2002). If the court decides that an individual should be initially committed as a sexual predator, he or she is temporarily committed to a secure treatment facility for treatment and evaluation. Within sixty days the facility must provide a report to the court on the individual's condition and evaluation, and another hearing is held within ninety days of the initial commitment. If a court determines after this second hearing that an individual continues to meet the commitment criteria, the commitment is made indeterminate. See Minn. Stat. §§ 253B.18, subds. 1, 2; 253B.185 (2002).

Committed persons have the right to appeal their commitments, as well as unabridged rights to seek state habeas relief. Minn. Stat. § 253B.23, subds. 5, 7 (2002). Furthermore, the committed individual or the treatment facility may petition for provisional or full discharge every six months. Minn. Stat. § 253B.18, subd. 5 (2002). A special review board hears such petitions and makes recommendations to the Commissioner of Human Services, Minn. Stat. § 253B.18, subds. 4c, 5 (2002), and any party aggrieved by the Commissioner's decision may petition for rehearing to a judicial appeal panel. Minn. Stat. § 253B.19 (2002).

Poole argues that the Supreme Court has incorporated the Seventh Amendment "sub silentio" into the Fourteenth Amendment, but its direct comment on the issue is that it "has not held that the right to jury trial in civil cases is an element of due process applicable to state courts through the Fourteenth Amendment," Curtis v. Loether, 415 U.S. 189, 192 n.6 (1974). We cannot infer the contrary from what was not said in Crane and Hendricks, and any possible inference drawn from the Court's silence cannot constitute clearly established federal law.

We conclude that the Minnesota state court decision declining to grant a jury trial in Poole's case is not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. There is no clearly established Supreme Court law which holds that due process requires a jury trial in civil commitment proceedings or that incorporates the Seventh Amendment right to a jury for such cases. Moreover, the Supreme Court has found merit in permitting states to make their own individual procedural choices for handling commitment cases, approving a standard of proof less than beyond a reasonable doubt. See Addington, 441 U.S. at 431. For these reasons, Poole's petition for a writ of habeas corpus must be denied.[5]

---

[5] Poole additionally argues that it is a violation of equal protection to deny a jury trial to individuals subject to SPP or SDP commitments because such

Accordingly, we affirm the judgement of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

commitments result from the arbitrary exercise of discretion by county attorneys and the state attorney general. The certificate of appealability in this case was limited to whether Poole has a federal due process right to a jury trial. Since it did not include Poole's equal protection argument, that issue is not before the court. See Carter v. Hopkins, 151 F.3d 872, 874 (8th Cir. 1998) ("appellate review is limited to the issues specified in the certificate of appealability.").

# UNITED STATES COURT OF APPEALS

## FOR THE EIGHTH CIRCUIT

No. 02-2629

CV 01-1460 PAM/JGL

| | | |
|---|---|---|
| James Robinson Poole, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Kevin Goodno, Commissioner, | * | |
| Minnesota Department of Health | * | |
| and Human Services, | * | |
| | * | |
| Appellee. | * | |

**JUDGMENT**

This appeal from the United States District Court was submitted on the record of the district court, briefs of the parties and was argued by counsel.

After consideration, it is hereby ordered and adjudged that the judgment of the district court in this cause is affirmed in accordance with the opinion of this Court.

(5172-010199)

July 7, 2003

Order Entered in Accordance with Opinion:

Michael E. Gans

Clerk, U.S. Court of Appeals, Eighth Circuit.

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

SEP 15 2003

VEM